UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES AVIATION UNDERWRITERS INC.,<br><br>Plaintiffs,<br><br>V.<br><br>AEROSPIKE IRON, LLC, AND CHARLES BRANDES,<br><br>Defendants. | Case No.: 21CV758-GPC(BLM)<br><br>**ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>[ECF No. 48] |

AND RELATED COUNTER CLAIMS

Currently before the Court is Defendants' November 23, 2022 Motion to Compel Production of Documents ("MTC") [ECF No. 48], Plaintiff's December 7, 2022 Opposition ("Oppo.") [ECF No. 51], and Defendants' December 14, 2022 Reply ("Reply") [ECF No. 52]. For the reasons set forth below, Defendants' motion is **GRANTED IN PART AND DENIED AS MOOT IN PART**.

### FACTUAL AND PROCEDURAL BACKGROUND

This case was initiated on April 16, 2021 when Plaintiff filed a complaint for recission and declaratory relief. ECF No. 1. The complaint alleges that Mr. Scott Kitchens, acting as the agent and representative of Defendants, reached out to insurance broker Pacific Coast Aviation

Insurance in August 2020 to obtain insurance on an aircraft. Id. at 2-3. Mr. Kitchens represented that the aircraft would be piloted by pilots Randy Judd and/or Jerome Eyquem and that he would not be operating the aircraft himself. Id. at 3. Mr. Kitchens did not disclose that he did not have a valid pilot's license at that time. Id. Based on Mr. Kitchens' representations, United States Aircraft Insurance Group ("USAIG") issued an insurance policy. Id. at 4. Unbeknownst to USAIG, on February 13, 2021, Defendants allowed unqualified individuals, Mr. Kitchens and Mr. Nathan Russell, to pilot the plane. Id. at 5. Mr. Kitchens and Mr. Russell had to abort the aircraft take off and ran off the runway resulting in $75,000 worth of damage to the landing gear alone. Id. Since Mr. Kitchens did not hold a valid license and Mr. Russell's credentials prohibited him from piloting the aircraft without a properly licensed pilot in command, neither were able to legally operate the aircraft. Id. After conducting an investigation, United States Aviation Underwriters, Inc. filed the instant complaint. Id. at 6.

On December 21, 2021, Defendants answered Plaintiff's complaint and filed counterclaims against Plaintiff and Counterdefendants Ace American Insurance Company and National Liability & Fire Insurance Company for breach of contract, breach of the implied covenant of good faith and fair dealing - bad faith, and declaratory judgment. ECF No. 19. The counterclaims allege that Plaintiff/Counterdefendant is the manager of USAIG[1] and that USAIG issued an insurance policy to Defendants for August 25, 2020 to August 25, 2021. Id. at 9-10. The policy identified the participating companies as Ace American Insurance Company and National Liability & Fire Insurance Company and Defendants as the policy holders. Id. at 10. The policy defined pilots as "[a]ny pilot who has been approved by the 'Policyholder', or their designee." Id. After the aborted take off and resulting damage to the aircraft on February 13, 2021, Defendants notified USAIG of the accident and requested coverage under the policy. Id. at 10-11. On March 11, 2021, USAIG acknowledged the claim

---

[1] Defendants' counterclaims are against USAU individually and on behalf of USAIG. ECF No. 19 at 9. In the countercomplaint, Defendants use "USAIG" to refer to Plaintiff, USAIG, Ace American Insurance Company, and National Liability & Fire Insurance Company collectively. Id.

and informed Defendants that it was conducting an investigation of the accident. Id. at 11. Defendants informed USAIG that they intended to fully cooperate with the investigation and produced all documents requested by USAIG. Id. Despite this, USAIG failed to conduct a "full and fair investigation of the Claim" or interview a single person identified as having knowledge of the accident. Id. On April 16, 2021, without providing any notice to Defendants, USAIG initiated the instant matter seeking rescission of the policy and a declaration that the claim is not covered. Id.

## RELEVANT DISCOVERY BACKGROUND

On September 21, 2022, Defendants served Plaintiff with their Second Set of Requests for Production. See ECF No. 48-2, Declaration of Scott A. Bowan in Support of Defendants/Counterclaimants' Motion to Compel Production of Documents ("Bowan Decl.") at ¶ 2, Exh. 1. On October 24, 2022, Plaintiff served its responses to Defendants' Second Set of Requests for Production. Id. at ¶ 3, Exh. 2. On October 27, 2022, defense counsel, Mr. Scott Bowan emailed a ten-page letter to Plaintiff's counsel, Mr. Ross Cunningham, regarding deficiencies in Plaintiff's objections and responses to Defendants' Second Set of Requests for Production. Id. at ¶ 4. On November 1, 2022, the parties participated in a telephonic meet and confer to discuss Plaintiff's responses to Defendants' Second Set of Requests for Production ("RFP"). Id. at ¶ 5. While the parties were able to resolve some of their disputes, RFP Nos. 11-14 and 16 remain at issue. Id.

On November 21, 2022, counsel for Plaintiff, Mr. Bryan David and counsel for Defendants, Messrs. Scott A. Bowan and Mark A. Johnston, jointly contacted the Court regarding a discovery dispute. Id.; see also ECF No. 47. In regard to the dispute, the Court issued a briefing schedule, and the parties timely filed the motion to compel, opposition, and reply. Id.; see also MTC, Oppo., and Reply.

## LEGAL STANDARD

The scope of discovery under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Typically, the relevance standard is broad in scope and "encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in a case." Doherty v. Comenity Capital Bank, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017). Relevance, however, is not without limits. Id. The 2015 amendment to Rule 26(b) removed the phrase "reasonably calculated to lead to the discovery of admissible evidence" because it was often misconstrued to define the scope of discovery. Fed. R. Civ. P. 26(b)(1) advisory committee's notes (2015 amendment). Instead, to fall within the scope of discovery, the information must also be "proportional to the needs of the case," requiring lawyers to "size and shape their discovery requests to the requisites of a case" while "eliminat[ing] unnecessary or wasteful discovery." Fed. Civ. R. P. 26(b)(1); Cancino Castellar v. McAleenan, 2020 WL 1332485, at *4 (S.D. Cal Mar. 23, 2020) (quoting Roberts v. Clark Cty. Sch. Dist., 312 F.R.D. 594, 603 (D. Nev. 2016)).

District courts have broad discretion to determine relevancy for discovery purposes. D.M. v. County of Merced, 2022 WL 229865, at * 2 (E.D. Cal. Jan. 26, 2022) (citing Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) and Surfvivor Media v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005)). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)"). Further, "[w]hen analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in

the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Cancino, 2020 WL 1332485, at *4 (citing Fed. R. Civ. P. 26(b)(1)).

Fed. Civ. R. P. 34 provides that a party may serve on another request for production of documents, electronically stored information, or tangible things within the scope of Fed. Civ. R. P. 26(b). Fed. R. Civ. P. 34(a). Where a party fails to produce documents requested under Rule 34, the party propounding the request for production of documents may move to compel discovery. See Fed. R. Civ. P. 37(a). "The party seeking to compel discovery has the burden of establishing that its requests satisfy the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining, or supporting its objections." Williams v. County of San Diego, 2019 WL 2330227, at *3 (citing Bryant v. Ochoa, No. 7cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal quotations omitted).

## DISCUSSION

Defendants seek an order from the Court compelling Plaintiff to produce documents in response to RFP Nos. 11-14 and 16. MTC; see also Reply.

As an initial matter, the Court notes that despite asserting numerous objections to each of the RFPs at issue, the only objections Plaintiff includes in its opposition to the motion to compel concern relevance and proportionality. Oppo. Accordingly, those are the only objections the Court will address in this order.[2] Additionally, while Plaintiff now argues that it produced the relevant insurance policy in response to RFP Nos. 11-14 and that the produced insurance policy is a sufficient response, Plaintiff's actual responses do not indicate that any responsive documents were produced or would be produced. See MTC at 7-8; see also Bowan Decl. at Exhs. 1-2.

---

[2] Plaintiff does provide additional objections regarding RFP No. 16 which the Court addresses below.

A. <u>Agreements with the Participating Companies RFPs Nos. 12-14</u>

RFP Nos. 12-14 and Plaintiff's responses are as follows:

**REQUEST FOR PRODUCTION NO. 12**: Produce all agreements between You and each of the Participating Insurers relating to the handling and payment of claims under the Policy.

**RESPONSE**: Plaintiff objects to this request because it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects that this request is not proportional to the needs of the case. Plaintiff objects that this request is not properly limited in temporal or subject matter scope. Plaintiff objects that the entirety of what might be encompassed by the phrase "handling and payment of claims under the Policy" is not at issue in this case. Plaintiff further objects because this request seeks documents that are proprietary and subject to trade secret protection and are not relevant to any claim or defense at issue in this lawsuit.

**REQUEST FOR PRODUCTION NO. 13**: Produce all Agreements between You and each of the Participating Insurers appointing You as agent or authorized representative of each Participating Insurer for purposes of underwriting the Policy, issuing the Policy, handling claims under the Policy, paying claims under the Policy, and initiating and conducting this litigation.

**RESPONSE**: Plaintiff objects to this request because it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects that this request is not proportional to the needs of the case. Plaintiff objects that this request is not properly limited in temporal and subject matter scope. Plaintiff objects that the entirety of what might be encompassed by the phrases "underwriting," "handling claims," "paying claims," and "initiating and conducting this litigation" are not at issue in this case. Plaintiff further objects because this request seeks documents that are proprietary and subject to trade secret protection and are not relevant to any claim or defense at issue in this lawsuit. Plaintiff further objects to this request because it seeks documents or data that could invade the attorney-client communications and attorney work product privileges (including the common interest doctrine).

**REQUEST FOR PRODUCTION NO. 14**: Produce all Documents in support of Your contention, if any, that the Participating Insurers are not the real parties of interest in this litigation.

**RESPONSE**: Plaintiff objects to this request because it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects that this request seeks to improperly have Plaintiff prove a negative. Plaintiff further objects because this request seeks documents that are proprietary and subject to trade secret protection and are not relevant to any claim or defense at issue in this lawsuit.

MTC at 7-8; see also Bowan Decl. at Exhs. 1-2.

Defendants argue that the agreements between Plaintiff and the participating insurers are relevant and proportional to the needs of the case because (1) Plaintiff has made numerous allegations in the complaint that Defendants are entitled to explore, (2) Defendants are entitled to explore Plaintiff's right to "initiate and conduct this lawsuit, underwrite the Policy, handle claims under the Policy, and pay claims under the Policy on behalf of USAIG and each of the two Participating Insurers[,]" (3) the documents are relevant to Defendants' bad faith claim, and (4) the requests are narrowly tailored and the significant litigation expenses appropriately reflect the value of the case.  Mot. at 10-11.

Plaintiff contends that it should not be compelled to produce agreements between itself and the participating insurers because Defendants have failed to establish relevancy or proportionality.  Oppo. at 8.  Plaintiff contends that (1) there is no confusion regarding Plaintiff's position as manager of USAIG as it is clearly stated in the insurance policies at issue in this case and Defendants clearly stated this fact in their pleadings, (2) Plaintiff's authority to "initiate and conduct this lawsuit, underwrite the Policy, handle claims under the Policy, and pay claims under the Policy on behalf of USAIG and each of the two Participating Insurers[,]" is clearly set out in the insurance policy, and (3) Defendants' bad faith claim is totally unrelated to any agreement between Plaintiff and participating insurers.  Id. at 8-9.

Defendants reply that they never expressly acknowledged in their pleading that Plaintiff is the manager of USAIG and that regardless, they are entitled to explore the scope of Plaintiff's authority which Plaintiff failed to address in its opposition.  Reply at 5.  Defendants also reply that while the insurance policy contains conclusory statements about the legal relationships between Plaintiff and the participating insurers, Defendants are entitled to look beyond the policy

7

21CV758-GPC(BLM)

and examine the actual agreements. Id.  Finally, Defendants reply that they have alleged bad faith claims against Plaintiff, USAIG, and the two participating insurers and the agreements are relevant to evaluating Plaintiff's actions. Id. at 6.

The Court finds that RFP Nos. 12-14 seek relevant information regarding the details and scope of the relationship between Plaintiff, USAIG, and the participating insurers with regards to the underwriting and issuing of the policy as well as the handling of Defendants' claim.  As more fully set forth in Defendants' papers, the requested information is relevant to both Plaintiff's claims and Defendants' counterclaims.  See Mot.; Reply.  Plaintiff's argument that production of the insurance policy is a sufficient response to all of these RFPs is not persuasive for several reasons.  First, as noted above, this argument was not included in Plaintiff's response to the RFPs.[3]  Id.; see also Bowan Decl. at Exh. 2.  Second, Plaintiff has not established that the policy addresses all aspects of Defendants' requests.  Third, Plaintiff is not permitted to arbitrarily and unilaterally decide that the single document is a sufficient response to a RFP.  If there are additional responsive documents, Plaintiff must produce them.  Accordingly, Defendants' motion to compel response to RFP Nos. 12-14 is **GRANTED**.  Plaintiff must produce all responsive documents by **January 17, 2023.**

B. Reserves Information RFP No. 11

RFP No. 11 and Plaintiff's response are as follows:

**REQUEST FOR PRODUCTION NO. 11**: Produce all Documents relating to reserves that have been set for the Claim.

**RESPONSE**: Plaintiff objects to this request because it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects that this request is not proportional to the needs of the case. Plaintiff objects that this request is not properly limited in temporal or subject matter scope. Plaintiff objects that the entirety of what might be encompassed by the term "reserves" is not at issue in this case. Plaintiff further objects because this request seeks documents that are proprietary and subject to trade secret

---

[3] It is unclear if Plaintiff presented this objection during the November 1, 2022 meet and confer efforts with Defendants.

> protection and are not relevant to any claim or defense at issue in this lawsuit. Plaintiff further objects to this request because it seeks documents or data that could invade the attorney-client communication and attorney work product privileges.

MTC at 7; see also Bowan Decl. at Exhs. 1-2.

Defendants seek information about Plaintiff's reserves. MTC at 12. Defendants argue that the information is relevant and proportional because Defendants have alleged bad faith and note that discovery of reserves is not limited to third-party liability insurance claims. Id. at 13. Defendants argue that reserves are particularly relevant to a "claim that the insurer intentionally and unjustifiably refused or delayed in making payments as [Defendants] alleges here." Id. Defendants cite to Faye Ave. Props., LLC v. Travelers Prop. & Cas. Co. of Am., 2014 WL 1333669, at * 2 (S.D. Cal. April 2, 2014) and Beattie v. Provident Life and Accident Insurance Co., 2005 WL 8166041 (S.D. Cal. Sept. 23, 2005) in support of their position. Id.

Plaintiff contends that reserves information is not relevant and relies on Am. Protection Ins. Co. v. Helm Concentrates, Inc., 140 F.R.D. 448 (E.D. Cal. 1991). Oppo. at 10-11. Plaintiff distinguishes between expense reserves and loss reserves and contends that expense reserves are "not relevant 'to any claim or defense' in a first party bad faith action." Id. at 12 (emphasis in original) (quoting Faye Ave. Props., 2014 WL 1333669, at * 2). Plaintiff argues that Defendants' reliance on Faye Ave Props. and Beattie is misplaced as neither supports Defendants' position and both cases rely on a California Court of Appeal opinion, Lipton v. Superior Court, 48 Cal.App. 4th 1519, 1614–1615 (1996), instead of federal law. Id. at 13. Plaintiff further contends that loss reserves are not relevant to the instant matter because Defendants are aware of the potential size of the claim because Plaintiff has produced a damages report and the insurance policy states the maximum value of a claim for total loss of the aircraft. Id. at 12.

Defendants reply that at least two courts in this district have declined to follow the case Plaintiff relies on, Am. Protection Ins. Co., and that the decisions by the courts in Faye Ave Props. and Beattie to rely on a decision by the California Court of Appeal is not only reasonable,

but has been done in at least seventeen other federal court cases. Reply at 6-7. Defendants also reply that the discovery is seeking more than just the size of the reserves as other related information is relevant to their claim of bad faith. Id. at 7-8.

While Plaintiff is correct that the court in Am. Protection Ins. Co. found that reserve information was not discoverable in a first-party property insurance case, Defendant also is correct that at least two courts in the Southern District of California have chosen not to follow Am. Protection Ins. Co. See Faye Ave. Props., 2014 WL 1333669, at * 3; see also Beattie, 2005 WL 8166041. Specifically, the court in Faye Ave Props. concluded that loss reserves information was relevant to Plaintiff's bad faith claims where Plaintiff "theorize[d] that Defendant knew from the outset that Plaintiff's claim was likely to be for a large sum of money, that Defendant employed a strategy of making unjustifiable demands for proof of loss, and delayed payments to Plaintiff for which entitlement had been established, in order to induce Plaintiff to accept a low settlement offer."[4] Id. at *3. Plaintiff contends that the instant matter is distinguishable from Fay Ave Props. because Defendants "already ha[ve] all the information [they] need to ascertain 'how large a claim' USAU believes the loss could be if it were covered." Id. at 12. However, Defendants clearly state that they are not only interested in the amount of the reserves, but additional documents that may shed light on "whether, why, and when reserves were set or adjusted." Reply at 8.

The Court in Beattie also declined to adopt the analysis of Am. Protection Ins. Co. and found that

> [r]egardless of whether a duty to defend exists in a first party case, reserve information is relevant as to Plaintiff's claim of bad faith, because it may lead to the discovery of other admissible information, assist in evaluating the case, or be useful in trial preparation. Documents regarding Defendant's reserves may produce information as to Defendant's subjective belief of its potential liability on

---

[4] The court did, however, agree with defendant's argument that expense reserves were "not relevant to any claim or defense in th[e] action" and noted that "Plaintiff d[id] not offer any authority, and the Court [did] not f[i]nd any authority, to suggest that an insurer's expense reserves information is discoverable." Id. at *2.

this claim, which is relevant to Plaintiff's claim that Defendant intentionally targeted large loss claims for denial/termination tactics. Therefore, the documents are discoverable.

2005 WL 8166041 at *5.  In reaching its decision, the court noted the finding in Lipton, where the court found that the trial court "erred by completely precluding discovery of reserves on relevancy grounds, reasoning such information would assist the insured in 'evaluating his bad faith case and in preparing it for trial. That is enough to justify discovery.'" Id. (quoting Lipton, 48 Cal.App.4th at 1616). Plaintiff contends that the instant matter is distinguishable from Beattie because Beattie concerned an insurer accused of acting in bad faith by improperly denying a disability claim and because in the instant matter, there is no question regarding Plaintiff's belief about the size of the loss if covered because the policy clearly states that it could be up to $15,650,000.  Oppo. at 13.

      The Court finds the reasoning and holdings in Fay Ave Props. and Beattie persuasive. Contrary to Plaintiff's arguments, Defendants are not merely seeking the amount of the loss reserve, they are seeking information regarding "whether, why, and when reserves were set or adjusted." As such, the policy limits set forth in the produced insurance policy do not fully respond to RFP No. 11.  The Court finds that the requested information is relevant to Defendants' bad faith claims.  While Defendants do not explicitly state that they are not seeking expense reserves, they only argue that the loss reserves are relevant.  See Reply at 5-8.  Accordingly, Defendants' motion to compel response to RFP No. 11 is **GRANTED** as to Plaintiff's loss reserves. Plaintiff must produce all responsive documents regarding its loss reserves by **January 17, 2023**.

    C. Financial Information RFP No. 16

      RFP No. 16 and Plaintiff's response are as follows:

**REQUEST FOR PRODUCTION NO. 16**: Produce Documents evidencing the gross revenue, net profit, net worth, and total assets for each of the last three years for You and each of the Participating Insurers.

**RESPONSE**: Plaintiff objects to this request because it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects that Defendants have not made a proper showing to request for [sic] financial information. Plaintiff further objects because this request seeks documents that are proprietary and subject to trade secret protection and are not relevant to any claim or defense at issue in this lawsuit.

MTC at 8; see also Bowan Decl. at Exhs. 1-2.

Defendants seek financial information in support of their counterclaim for bad faith breach of the implied covenant of good faith and fair dealing and request for punitive damages. MTC at 14-17. Defendants argue that the information is relevant and proportional to the needs of the case as courts examine punitive damages in light of the party's financial condition, and note that the party seeking punitive damages is required to submit evidence of the other side's financial condition. Id. at 15.

Plaintiff contends that it should not be required to produce its financial information because any discovery related to bad faith or punitive damages is premature until the rescission issue has been determined. Oppo. at 14. If the policy is rescinded, Defendants' claims for bad faith and punitive damages will be moot. Id. Plaintiff further contends that it cannot be compelled to produce financial information for the participating insurers which are separate legal entities and parties to this matter and that its own financial information is irrelevant since it is the manager and not the insurer that would be required to pay a covered claim. Id.

Defendants reply that "bad faith under California law is premised on a 'withholding' of payment, not upon whether the insurer formally 'denied' a claim" and that Defendants are entitled to take the discovery they need to support their claims. Reply at 9-10. Defendants further reply that Brooks v. Motsenbocker Advanced Developments, Inc., 2008 WL 2446205 (S.D. Cal. 2008) is distinguishable "because the Court based its decision there on the existence of a pending motion for summary judgment," something that is not true for the instant matter. Id. at 10. Finally, Defendants reply that prior to filing its opposition, Plaintiff did not claim that the requested financial information was outside of its possession, custody, or control but regardless, Defendant has "mooted that objection by serving document requests on the Participating Insurers seeking their financial information." Id. at 11.

### 1. The Requests for Financial Information are not Premature

"[W]here a plaintiff states a claim for punitive damages, a defendant's financial information is relevant." Kalter v. Keyfactor, Inc., 2022 WL 16752977, at *2 (S.D. Cal., Nov. 7, 2022.) (quoting Toranto v. Jaffurs, 2018 WL 6062516, at *3 (S.D. Cal. Nov. 20, 2018)). While the "Ninth Circuit has not defined the parameters of the dissemination of financial information during discovery when punitive damages are alleged … [t]he approach employed by the majority of federal courts is that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial without making a prima facie showing that he is entitled to recover such damages." Id. (quoting E.E.O.C. v. Cal. Psychiatric Transitions, 258 F.R.D. 391, 394-95 (E.D. Cal. 2009)) and (citing Echostar Satellite LLC v. Viewtech, Inc., 2009 WL 10672432, at *2 (S.D. Cal. July 11, 2009) ("When a punitive damages claim is asserted, the majority of federal courts permit pretrial discovery of financial information without requiring the Plaintiff to establish a prima facie case on the issue of punitive damages.")). Plaintiff cites to Brooks in support of its position that financial information should not be compelled until dispositive motions are decided. Oppo. at 15. However, Brooks also recognized that plaintiffs were "entitled to discovery of Defendants' financial information" and only refrained from ordering the discovery because it would have been an "inefficient use of the parties' resources in light of the pending motion for summary judgment[,]" something that is not an issue in instant matter. Brooks, 2008 WL 2446205 at *5.

Here, Defendants have asserted a claim for punitive damages and fact discovery closes on February 16, 2023 [ECF No. 50] so Defendants' request is not premature. Plaintiff's argument that Defendants cannot request financial information until after the recission issue is decided is incorrect. The recission decision will not be made until after the close of fact discovery and Defendants would no longer have a right to conduct discovery at that time.

### 2. Financial Information for Participating Insurers

Plaintiff objects to Defendants' motion to compel financial information for each of the participating insurers because the participating insurers are separate legal entities and parties to the lawsuit and Plaintiff cannot be compelled to produce another parties' financial information.

Oppo. at 14-15. Defendants reply that they have "mooted that objection by serving document requests on the Participating Insurers seeking their financial information." Reply at 11.

### 3. Plaintiff's Financial Information is Relevant as Aviation Manager

Plaintiff contends that it should not be required to produce financial information because it is the Aviation Manager, not an insurer required to pay a covered claim, and therefore, its financial information is irrelevant. Oppo. at 15. While Defendant does not address this argument in its reply, Defendants' cross-claim alleges bad faith against Plaintiff and seeks punitive damages. ECF No. 19 at 12-13. The Court therefore finds that Plaintiff's financial information is relevant.

### 4. Finding

Because the request for financial information is not premature and because Defendants have alleged bad faith against Plaintiff, Defendants' motion to compel response to RFP No. 16 is **GRANTED**. Plaintiff must produce all responsive documents by **January 17, 2023**. Defendants' motion to compel responses to RFP No. 16 from Plaintiff on behalf of the participating insurers is **DENIED AS MOOT**.

## CONCLUSION

Defendants' motion to compel response to RFP Nos. 11-14 and 16 is **GRANTED IN PART and DENIED AS MOOT IN PART**. Plaintiff must serve Defendants with responses to RFP Nos. 11-14 and 16 by **January 17, 2023**. Plaintiff does not have to provide responses to RFP No. 16 on behalf of the participating insurers.

**IT IS SO ORDERED**.

Dated: 12/30/2022

Hon. Barbara L. Major
United States Magistrate Judge