# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES AVIATION UNDERWRITERS INC., a New York corporation, individually and on behalf of United States Aircraft Insurance Group,<br><br>Plaintiff,<br><br>v.<br><br>AEROSPIKE IRON, LLC, a California limited liability company; and CHARLES BRANDES, a California resident,<br><br>Defendants. | Case No.:  21-CV-758 JLS (BLM)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART, DENYING IN PART, AND RESERVING RULING IN PART MOTIONS *IN LIMINE*, AND**<br><br>**(2) SETTING STATUS CONFERENCE**<br><br>(ECF Nos. 164, 165) |

AEROSPIKE IRON, LLC; and
CHARLES BRANDES,

                    Counterclaimants,

v.

UNITED STATES AVIATION
UNDERWRITERS INC., individually and
on behalf of United States Aircraft
Insurance Group; ACE AMERICAN
INSURANCE COMPANY; and
NATIONAL LIABILITY & FIRE
INSURANCE COMPANY,

                    Counterdefendants.

Presently before the Court are Plaintiff/Counterdefendant United States Aviation Underwriters' ("USAU"), Counterdefendant Ace American Insurance Company's ("Ace"), and Counterdefendant National Liability and Fire Insurance Company's ("NLF") (collectively, "Plaintiffs") Motions *In Limine* (ECF No. 164) and Defendants/Counterclaimants Aerospike Iron, LLC's ("Aerospike") and Charles Brandes's (collectively, "Defendants") Motions *In Limine* (ECF No. 165). Having considered the Parties' arguments and the applicable law, the Court **GRANTS IN PART**, **DENIES IN PART**, and **RESERVES RULING IN PART** the Parties' MILs, as discussed below.

## PLAINTIFFS' MOTIONS *IN LIMINE*

**I.      Motion *in Limine* No. 1 (Exclude Evidence of Documents Related to Other Insurers)**

In their first Motion, Plaintiffs seek to preclude Defendants from offering evidence or eliciting testimony concerning "documents related to other insurers." ECF No. 164 at 6. Specifically, Plaintiffs seek to exclude the August 19, 2020, Global Aerospace Quote (ECF No. 164, Ex-1) and the August 20, 2020, XL Specialty Insurance Company Quote (ECF No. 164, Ex-2) (collectively, the "Proposals"). The Court **DENIES IN PART** and **RESERVES RULING IN PART** the Motion.

The Court **DENIES** the Motion insofar as Plaintiffs argue that the evidence is not relevant under Federal Rule of Evidence 401 or that the evidence is prejudicial under Federal Rule of Evidence 403. ECF No. 164 at 7. Defendants' use of the Proposals to demonstrate that there is no industry-wide definition of the term "pilot" "has any tendency to make a fact more or less probable than it would be without the evidence" and that fact "is of consequence in determining the action." FRE 401. Therefore, the Proposals are relevant. Further, Plaintiffs' argument that the Proposals will lead to jury confusion is unpersuasive, as Defendants state they plan to use the evidence to demonstrate that there is no universal definition of the term "pilot"—not, as Plaintiffs contend, to prove that the additional restrictions in the policies impact who is considered a "pilot." ECF No. 164 at 7; ECF No. 166 at 4–5.

The Court **RESERVES RULING** on the Motion insofar as it argues the evidence is inadmissible for lack of foundation under Federal Rules of Evidence 901 and 902 or hearsay under Federal Rules of Evidence 801 and 802. For the authentication objection, the Court reserves ruling to allow Defendants to properly lay the foundation for and authenticate the Proposals at trial. For the hearsay objection, the Court reserves ruling to allow Defendants to satisfy the conditions of the business records exception under Federal Rule of Evidence 803(6) or another applicable exception. *See MRT Const. Inc. v. Hardrives Inc.*, 158 F.3d 478, 483 (9th Cir. 1998) ("[R]ecords a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records.").[1]

/ / /

/ / /

---

[1] Defendants state in their Supplemental Briefing (ECF No. 188) that they "expect[] to show through the testimony or certification of Mr. Hutter that he kept the other insurers' proposals in the regular course of his business, he relied upon them in providing services to Aerospike, and he had a substantial interest in ensuring that the proposals upon which he relied were accurate." ECF No. 188 at 5.

## II.    Motion *in Limine* No. 2 (Exclude Evidence of Reinsurance)

In their second Motion, Plaintiffs seek to preclude Defendants from offering any evidence, testimony, argument, or reference to reinsurance.  ECF No. 164 at 8.  Plaintiffs contend that "evidence of reinsurance 'is irrelevant to a policy dispute between a direct insurer and insured.'"  *Id.* at 7 (citing *XL Specialty Ins. Co. v. Crawford Tech. Servs.*, No. CV04-8451-AHM (Mcx), 2006 WL 5112593, at *1 (C.D. Cal. Sept. 11, 2006) (granting insurer's motion *in limine* to exclude "Reference, Evidence or Argument Concerning Reinsurance")).  The Court **GRANTS** the Motion as it is reasonable and unopposed.  *See* ECF No. 166 at 10.

## III.    Motion *in Limine* No. 3 (Exclude Evidence of ACE and NLF)

In their third Motion, Plaintiffs seek to preclude Defendants from offering any evidence, testimony, argument, or reference related to Counterdefendants Ace and NLF (collectively, the "Participating Insurers") including but not limited to any agreements between them and USAU.  ECF No. 164 at 9.  The Court **DENIES** the Motion.  The Participating Insurers are parties to this case and their identity and principal/agent relationship with USAU are essential to establish their liability.  *See U.S. Aviation Underwriters Inc. v. Aerospike Iron, LLC*, No. 21-CV-758, 2024 WL 2948626, at *18 (S.D. Cal. June 11, 2024).  Further, the Court is not persuaded that a simple agency relationship risks confusing or muddling the issues.

## IV.    Motion *in Limine* No. 4 (Exclude Evidence Related to USAU's Loss Reserves in Connection with the Subject Aircraft)

In their fourth Motion, Plaintiffs seek to preclude Defendants from offering any evidence, testimony, argument, or reference related to USAU's loss reserves established in connection with the Subject Aircraft.  ECF No. 164 at 12.  The Court **GRANTS** the Motion as it is reasonable and unopposed.  *See* ECF No. 166 at 12.

/ / /

/ / /

/ / /

**V.    Motion *in Limine* No. 5 (Bifurcate Defendants' Punitive Damage Claim and Preclude Evidence of USAU's Financial Condition Until Punitive Damage Phase)**

In their fifth Motion, Plaintiffs seek to bifurcate Defendants' punitive damage claim into a separate phase and  preclude Defendants from introducing any evidence, argument, or reference to USAU's financial condition or status until the punitive damage phase of trial.  ECF No. 164 at 12.  The Court **GRANTS** the Motion as it is reasonable and unopposed.

The Court agrees with Plaintiffs that under FRCP 42(b), a court has broad discretion to order separate trials based on separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize."  *De Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993) (stating "[i]t is clear that Rule 42(b) gives courts the authority to separate trials into liability and damage phases").  Further, the Court finds that evidence of Plaintiffs' financial condition without first finding the conduct to be "malicious, oppressive[,] or in reckless disregard" of Defendants' rights may lead to prejudice and jury confusion.  *See Est. of Nunez v. Cnty. of San Diego*, No. 16-CV-01412 BEN (MDD), 2019 WL 2238655, at *5 (S.D. Cal. May 23, 2019).

**VI.   Motion *in Limine* No. 6 (Exclude Evidence of Repairability and Salvage Sale of the Subject Aircraft)**

In their sixth Motion, Plaintiffs seek to exclude evidence related to the repairability and salvage sale of the Subject Aircraft, including the Exhibits identified by Defendants in their Federal Rule of Civil Procedure 26(a)(3) disclosures—labeled Exhibits AA through AJ.  ECF Nos. 164 at 13–14; 116-1 at 5–7.  The Court **RESERVES RULING** on the Motion to consider the admissibility of each Exhibit in context.

**VII.  Motion *in Limine* No. 7 (Exclude Evidence that USAU Did Not Send Aerospike an Application for Insurance Before Issuing the Insurance Policy)**

In their seventh Motion, Plaintiffs seek to preclude Defendants from introducing evidence and testimony regarding "the fact that USAU did not send Aerospike an

application for insurance before issuing the insurance policy." ECF No. 164 at 15. The Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

The Court begins by concluding that Motion *in Limine* Seven is procedurally proper. The Court agrees with Plaintiffs that the Court's Order (ECF No. 158) did not prohibit the filing of new motions *in limine*, and the Court can and should address potential evidentiary issues now "to enable planning and avoid interruptions to [the] jury trial." *United States v. McElmurry*, 776 F.3d 1061, 1066 (9th Cir. 2015).

The Court **GRANTS** the Motion insofar as this evidence is tried to the jury. The Court finds that this evidence is only relevant to the rescission claim.[2]

The Court **DENIES** the Motion insofar as the evidence will be presented to the bench. Defendants correctly point out that "[w]hen determining whether a concealed fact is material, an important consideration involves whether the insurance company inquired as to the fact." *U.S. Aviation Underwriters Inc.*, 2024 WL 2948626, at *12 (citing *Am. Mut. Liab. Ins. Co. v. Goff*, 281 F.2d 689, 693–94 (9th Cir. 1960)). Evidence that USAU did not send Aerospike an application for insurance "has any tendency to make a fact more or less probable than it would be without the evidence" and that fact "is of consequence in determining the action." Fed. R. Evid. 401.

## VIII. Motion *in Limine* No. 8 (Exclude Evidence that Scott Kitchens Did Not Know that the FAA Revoked His Pilot's License)

In their eighth Motion, Plaintiffs seek to preclude Defendants from offering any evidence, testimony, or argument that Aerospike's missing agent and aircraft manager, Scott Kitchens ("Kitchens"), did not know that the FAA had revoked his pilot's license at the time Aerospike obtained insurance from USAU. ECF No. 164 at 16. The Court **RESERVES RULING** on the Motion.

---

[2] At the Motion *in Limine* hearing, Defendants' counsel agreed with the Court that evidence that USAU did not send Aerospike an application for insurance is only relevant to the rescission claim.

21-CV-758 JLS (BLM)

The Court begins by concluding that Plaintiffs' Motion *in Limine* Eight is also procedurally proper based on the reasoning discussed earlier.  The Court reserves ruling on the Motion insofar as Plaintiffs object under Federal Rule of Evidence 602.  While the Court is aware that Kitchens is missing, the Court is tentatively inclined to reserve ruling to allow Defendants to present witnesses with personal knowledge and consider the evidence as it is introduced.

Insofar as Plaintiffs rely on the mailbox rule, the Court reserves ruling to allow Plaintiffs to introduce sufficient evidence of mailing to raise the presumption and allow Defendants an opportunity to rebut.  *See Schikore v. BankAmerica Supp. Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001) ("[T]he proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time."); *see also California Lab. & Workforce Dev. Agency v. CompuCom Sys., Inc.*, No. 21-cv-2327-KJM-KJN, 2022 WL 3142704, at *3 (E.D. Cal. July 27, 2022) ("To rely on the presumption that [a party] received the mailed notice of the company's new policy, [the party attempting to invoke the mailbox rule] must show the policy was properly mailed and addressed.").

**IX.  Motion *in Limine* No. 9 (Exclude Evidence Seeking to Paint the Insurance Industry in a Negative Light)**

In their ninth Motion, Plaintiffs seek to preclude Defendants from offering any evidence, testimony, argument, or reference that seeks to paint the insurance industry in a negative light.  ECF No. 164 at 19.  The Court **DENIES** the Motion.

The Court begins by concluding that Plaintiffs' Motion *in Limine* Nine is also procedurally proper based on the reasoning discussed earlier.  Further, Defendants state that they "do not intend to offer any evidence, testimony, or argument painting the insurance industry, in general, in an unfavorable light," but only intend to offer such evidence about USAU's interactions in the circumstances underlying this case.  ECF No. 166 at 20–21.  Plaintiffs state that this Motion only covers evidence concerning the insurance industry generally, and not contentions relating to USAU specifically.  ECF No.

21-CV-758 JLS (BLM)

170 at 9.  Therefore, the Parties are in agreement.  If, at trial, Defendants introduce evidence painting the insurance industry generally in an unfavorable light, Plaintiffs can object at that time.

**DEFENDANTS' MOTIONS *IN LIMINE***

**I.      Motion *in Limine* No. 1 (Exclude Evidence of Defendants' Alleged Concealment of Post-Underwriting Activities)**

In their first Motion, Defendants seek to exclude evidence, mention, fact, or contention of Defendants' alleged concealment of post-underwriting activities and to preclude the use of or reference to Nathan Russell's ("Russell") December 14, 2020, Pilot Record Form (Plaintiffs' Exhibit 35) and its email transmittal from Tim Hutter to USAU (Plaintiffs' Exhibit 109).  ECF No. 165 at 8–9.  The Court **GRANTS IN PART**, **DENIES IN PART**, and **RESERVES RULING IN PART** the Motion.

The Court **GRANTS** the Motion insofar as the evidence will be presented to the jury in the legal phase of trial.  The Court is unpersuaded by Plaintiffs' argument that this evidence is relevant to the meaning of "pilot," and the risk of jury confusion substantially outweighs any potential probative value.

The Court **DENIES** the Motion insofar as the evidence will be presented to the bench.  In its Summary Judgment Order, the Court relies on evidence of Aerospike's December 2020 actions when analyzing the materiality element of the concealment claim. *See U.S. Aviation Underwriters Inc.*, 2024 WL 2948626, at *12.  While Defendants are correct that Plaintiffs cannot use the post-underwriting actions as the relevant conduct forming the basis of the concealment claim, this evidence may be relevant for other purposes for which it is not foreclosed, i.e., materiality.

The Court **RESERVES RULING** on the Motion insofar as the evidence will be presented during the bad faith phase of trial.[3]

---

[3] The Court has not decided how the bad faith claim will be tried—i.e., whether bad faith will be heard in a separate phase.  If they are tried together, the Court will consider limiting instructions submitted by the Parties.  This is true for all the "reserved rulings" regarding bad faith in this Order.

21-CV-758 JLS (BLM)

**II.    Motion *in Limine* No. 2 (Exclude Alleged Misrepresentations by Defendants During the Application Process)**

In their second Motion, Defendants seek to exclude any mention, evidence, fact, or contention of alleged misrepresentations by Defendants prior to or during the application process for the Policy.  ECF No. 165 at 10.  The Court **GRANTS IN PART**, **DENIES IN PART**, and **RESERVES RULING IN PART** the Motion.

The Court **GRANTS** the Motion insofar as Plaintiffs intend to introduce evidence of alleged misrepresentations by Defendants prior to or during the application process for the Policy to the jury in the legal phase of trial.  The Court is unpersuaded that this evidence is relevant to the meaning of "pilot" because Aerospike's understanding of the term "pilot" does not tend to prove what "pilot" means within the customary usage of that term in the aviation insurance industry.

Further, the Court **GRANTS** the Motion insofar as Plaintiffs continue to argue that Defendants' statements were misrepresentations.  In the Court's Summary Judgment Order, the Court found that "no reasonable jury could find that Defendants' agents communicated a false representation to Plaintiffs at or before the issuance of the Policy."[4] *U.S. Aviation Underwriters Inc.*, 2024 WL 2948626, at *11.  Therefore, Plaintiffs cannot continue to argue that these statements (or any pre-Policy statements or actions) are "misrepresentations" as they continue to do in the Amended Pretrial Order and Opposition to Defendants' Motions *in Limine* (ECF No. 167).

The Court **DENIES** the Motion insofar as the evidence will be tried to the bench.  These facts may be relevant to materiality.  While Plaintiffs cannot continue to argue

---

[4] The three statements addressed in the Summary Judgment Order are: (1) Kitchens gave Hutter the impression that Judd and Eyquem would crew the aircraft going forward, (2) Kitchens told Hutter that Kitchens would not be piloting the Covered Aircraft, and (3) Hutter told USAU Underwriter Drew Whitaker that Eyquem and Judd would come on board as full-time pilots.  *U.S. Aviation Underwriters Inc.*, 2024 WL 2948626, at *9.  The Court found that, regarding statements 1 and 2, Plaintiffs failed to offer any evidence that Kitchens' alleged misrepresentations were communicated to them.  *Id.*  Regarding statement 3, the Court found that the representation was made to Plaintiffs, but that it was not false— Eyquem and Judd would be the full-time pilots at the time of contract formation.  *Id.* at 10–11.

21-CV-758 JLS (BLM)

recission based on misrepresentation, Plaintiffs can present the evidence for other issues not decided on summary judgment.

The Court **RESERVES RULING** on the Motion insofar as the evidence will be presented during the bad faith portion of trial.

III. **Motion *in Limine* No. 3 (Exclude Testimony by Plaintiffs' Expert, Morris Smith, Regarding the Alleged Diminished or Fair Market Value of the Subject Aircraft)**

In their third Motion, Defendants seek to preclude any testimony by Plaintiffs' expert, Morris Smith ("Smith"), regarding (1) the diminished value of the Subject Aircraft following the accident, (2) the impact of any failure to preserve the engines on the value of the Aircraft following the accident, and (3) the sale of the Subject Aircraft following the accident and whether Aerospike received fair market value. The Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

The Court **GRANTS** the Motion insofar as Plaintiffs attempt to reargue the admissibility of Smith's repairability opinion. *See* ECF No. 167 at 13–14. In the Court's *Daubert* section of its Summary Judgment Order, the Court found that Plaintiffs' witness, Smith, cannot offer opinion that the Subject Aircraft could be repaired because he did not acquire sufficient information "about the internal/structural conditions of the aircraft and the availability of parts" and therefore "neither had sufficient information nor applied a reliable methodology." *U.S. Aviation Underwriters Inc.*, 2024 WL 2948626, at *25. Therefore, any argument by Plaintiffs that Smith's repairability opinion can be used to prove the diminished value of the Subject Aircraft or that Smith can testify regarding the "spoilation of evidence" is not permitted.

The Court **GRANTS** the Motion regarding Smith's ability to testify as to the exact amount of diminished value of the Subject Aircraft and whether the Subject Aircraft's engines actually were damaged. In the Court's Summary Judgment Order, the Court allowed Smith to testify that the Subject Aircraft's engines were stored open to the elements and that exposure could result in the engines being economically unreasonable to

21-CV-758 JLS (BLM)

ever return to service or have salvage value. *U.S. Aviation Underwriters Inc.*, 2024 WL 2948626, at *26 (citing ECF No. 80, Ex. 10 at 172–73). Smith can opine that this exposure *could result* in the engines diminishing in value or increasing repair costs. However, Smith cannot testify that the Subject Aircraft's engines *actually were* damaged, as he did not observe the engines and testified at deposition that he did not know if a failure to preserve the engines resulted in any damage to the engines here. *See* ECF No. 171 at 4 (citing ECF No. 171, Ex. L).

Additionally, the Court **GRANTS** the Motion regarding Smith's ability to testify as to whether Aerospike received fair market value at the sale. Smith testified at his deposition that "he had no idea what happened to the Aircraft following the accident." *See* ECF No. 171 at 4.

The Court **DENIES** the Motion insofar as it seeks to exclude Smith's testimony regarding preservation. The Court follows its previous ruling concluding that Smith's testimony regarding preservation is admissible and relevant to the failure to mitigate defense. *See U.S. Aviation Underwriters Inc.*, 2024 WL 2948626, at *26 ("Exposure 'could result in the engines being economically unreasonable to ever return to service or have salvage value.'" (quoting ECF No. 80, Ex. 10 at 172–73)).

**IV.    Motion *in Limine* No. 4 (Exclude Evidence of Defendant Charles Brandes' Net Worth or Personal Wealth)**

In their fourth Motion, Defendants seek to preclude any testimony, mention, or evidence of Defendant Charles Brandes' ("Brandes") personal wealth or net worth at trial. ECF No. 165 at 13. The Court **DENIES IN PART** and **GRANTS IN PART** the Motion.

The Court **DENIES** the Motion insofar as the evidence will be presented during the punitive damages phase of trial. In the cases cited by Defendants in support of their Motion, the parties explicitly narrowed their motion to exclude the punitive damages phase of trial. *See Farris v. Int'l Paper, Inc.*, No. 2:13-CV-02079-CAS, 2014 WL 6473273, at *22 (C.D. Cal. Nov. 17, 2014) ("Defendant argues that such evidence is not relevant to any of plaintiffs' claims, especially since plaintiffs are not seeking punitive damages."); *Dubric*

11

21-CV-758 JLS (BLM)

*v. A Cab, LLC*, No. 15-cv-2136-RCJ-CWH, 2017 WL 662487, at *4 (D. Nev. Feb. 17, 2017) ("Defendants seek to exclude evidence of their net worth unless and until [Plaintiff] establishes a prima facie case for punitive damages."). The Court is not persuaded by Defendants that the Court should decide otherwise.

The Court **GRANTS** the Motion insofar as the evidence is presented at any other point of trial beyond the punitive damages phase. Consistent with the Court's ruling on Plaintiffs' Motion *in Limine* Five, where the Court precluded evidence of USAU's financial condition until the punitive damages phase of trial, the Court will do the same here. Defendant Brandes' financial condition is irrelevant at any other point in trial besides the punitive damages phase.

**V.    Motion *in Limine* No. 5 (Exclude the National Transportation Safety Board's Report)**

In their fifth Motion, Defendants seek to exclude the National Transportation Safety Board's ("NTSB") report. ECF No. 165 at 14. This report is marked as Plaintiffs' Exhibit 103. *Id.*, Ex. C. The Court **GRANTS** the Motion.

"The NTSB issues two documents in relation to an investigation of an aircraft accident in the United States: 1) a 'factual accident report' and 2) a 'board accident report.'" *Britton v. Dallas Airmotive, Inc.*, No: 7-cv-547-EJL, 2011 WL 13196592, at *1–2 (D. Idaho May 20, 2011). "The first is prepared by the investigator-in-charge and contains the results of the investigator's accident investigation." *Id.* "The second report is the NTSB's final determinations of the accident including its probable cause finding." *Id.*

There is a statutory bar to admission of the NTSB's report under 49 U.S.C. § 1154(b). Section 1154(b) states: "No part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." Section 835.2 of Title 49 of the Code of Federal Regulations defines the "Board accident report" as the "report containing the Board's determinations, including the probable cause of an accident, issued either as a narrative report or in a computer format." The regulation also defines the

21-CV-758 JLS (BLM)

"[f]actual accident report" as "the report containing the results of the investigator's investigation of the accident" where "there is no statutory bar to . . . admission in litigation." *Id.*

Here, Plaintiffs' Exhibit 103 is the entirety of the Board's accident report—not the investigator's factual report. *See* ECF No. 165, Ex. C. Title "49 U.S.C. § 1154(b) does not prohibit [Plaintiffs] from introducing an investigator's factual incident report." *WM Aviation, LLC v. Cessna Aircraft Co.*, No. 611-CV-2005-ORL18-GLK, 2013 WL 12392461, at *2 (M.D. Fla. July 2, 2013). Plaintiffs contend, while citing to cases holding opposite, that the "factual information" in the Report is admissible. ECF No. 167 at 15 (citing *WM Aviation, LLC*, 2013 WL 12392461, at *2 (finding that the entire Board report was excluded but allowing the investigator's factual incident report)). This interpretation of the statute, agreed with by some early circuit court opinions, has now been forgone by circuit courts, as it is contrary to the statutory text. *Chiron Corp. and PerSeptive Biosys., Inc. v. Nat'l Transp. Safety Bd.*, 198 F.3d 935, 940 (D.C. Cir. 1999) (citing 49 C.F.R. § 835.2). The implementing regulation, 49 C.F.R. § 835.2, states that the "factual accident report" is an investigators report of his investigation of the accident. *Id.* Therefore, "[b]ecause this report is not 'a report of the Board,' it is not barred by the statute and is therefore admissible." *Id.* "[T]he only reports that are admissible are the factual reports that investigators do, not the Board's findings, either factual or probable cause. . . ." *Id.* (cleaned up); *see also Benna v. Reeder Flying Serv., Inc.*, 578 F.2d 269, 271 (9th Cir. 1978) ("There is no question that it was error for the jury to view [the NTSB] accident report since by statute the report is inadmissible evidence.").

While Plaintiffs cite to one Fifth Circuit opinion, *Curry v. Chevron, USA*, 779 F.2d 272, 274 (5th Cir. 1985), finding the factual portions of the report could be distinguished, the opinion is not "weighty authority, even for the limited rule enunciated, because there are later decisions [from the Fifth Circuit] that adhere to the strict terms of the statute." *Chiron Corp.*, 198 F.3d at 941; *see also Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998) ("Federal law flatly prohibits the NTSB accident report

21-CV-758 JLS (BLM)

from being admitted into evidence in any suit for damages arising out of accidents investigated by the NTSB.").

The Court's conclusion is further bolstered by the fact that the Board report itself states that 49 U.S.C. § 1154(b) precludes the admission of any part of an NTSB report in a civil action for damages related to the report and provides a link to "[a] factual report that may be admissible under 49 U.S.C. § 1154(b)." ECF No. 165, Ex. C at 22; *see also Olympic Air, Inc. v. Helicopter Tech. Co.*, No. C17-1257-RSL, 2022 WL 823545, at *2 (W.D. Wash. Mar. 18, 2022) (excluding the entirety of the Board report because, among other things, the factual accident report was separately linked on the NTSB's database website and the NTSB Report "bears a legend warning that 49 U.S.C. § 1154(b) 'precludes the admission into evidence or use of any part of an NTSB report related to an incident or accident in a civil action for damages resulting from a matter mentioned in the report'").

Therefore, the NTSB Board report, Exhibit 103, is inadmissible, but Plaintiffs may introduce factual and investigative reports by the NTSB investigator, like the factual report that the link in the Board report leads to, ECF No. 165, Ex C at 22. *See Benavidas v. Telsa, Inc.*, No. 21-cv-21940-BLOOM/Torres, 2025 WL 2029739, at *6 (S.D. Fla. July 20, 2025) (disallowing plaintiffs from relying on any portion of the NTSB report) (collecting cases).

**VI.    Motion *in Limine* No. 6 (Exclude Use of FAA Records of Kitchens' Airline Transport Pilot Certificate)**

In their sixth Motion, Defendants seek to preclude the use of FAA records regarding the revocation of Kitchens' Airline Transport Pilot certificate. ECF No. 165 at 16. Specifically, Defendants seek to exclude the February 13, 2019, Emergency Order of Revocation (Plaintiffs' Exhibit 101) and the June 9, 2021, FAA Violation Letter (Plaintiffs' Exhibit 9). *Id.*, Exs. D, E. The Court **GRANTS IN PART**, **DENIES IN PART**, and **RESERVES RULING IN PART** the Motion.

The Court **GRANTS** the Motion insofar as the evidence will be presented to the jury in the legal phase of trial. Any reference to the facts and circumstances surrounding the February 2019 revocation of Kitchens' Airline Transport Pilot certificate is irrelevant to

21-CV-758 JLS (BLM)

the issues to be tried and unduly prejudicial to Defendants under FRE 403.  *See Britton*, 2011 WL 13196592, at *6 (finding that statements in an FAA report "do not go to prove or disprove any of the issues the jury in this case will be tasked with deciding and the unsupported inferences that may be drawn from this evidence is clearly unduly prejudicial").  Plaintiffs' state in their Opposition that this evidence tends to demonstrate how "unethical and shady Scott Kitchens really was"—which is irrelevant to any of the issues to be tried.  ECF No. 167 at 16.  The Emergency Order of Revocation can still be referenced as evidence of its existence and to satisfy the mailbox rule—if Plaintiffs can make that showing.  However, the content of the revocation letter is irrelevant and inadmissible.

Regarding the FAA Violation Letter, any probative value of this Exhibit has already been stipulated to by the Parties.  *See* Amended Pretrial Order at 17 ("The Federal Aviation Administration ('FAA') had revoked Kitchens' license on February 13, 2019, and from that date forward he did not hold any certificates or ratings that would allow him to pilot any aircraft.").  Therefore, Exhibit 9 is excluded in its entirety during the legal phase of trial.

The Court **DENIES** the Motion insofar as the evidence will be tried to the bench as this information is relevant to materiality.

The Court **RESERVES RULING** on the Motion insofar as the evidence will be presented in the bad faith phase of trial.

## VII.    Motion *in Limine* No. 7 (Exclude Use of February 10, 2022, FAA Order of Suspension Report for Russell)

In their seventh Motion, Defendants seek to exclude the February 10, 2022, FAA Order of Suspension Report regarding Russell.  ECF No. 165 at 18.  This report is marked as Plaintiffs' Exhibit 8.  *Id.*, Ex. F.  The Court **GRANTS IN PART** the Motion.

Unlike Kitchens, the Parties have not stipulated to the state of Russell's certificate at the time of the accident—therefore, this exhibit is relevant to whether Russell met the definition of "pilot."  At the hearing, the Parties agreed that certain sections of Plaintiffs'

15

Exhibit 8 can be redacted.  Thus, the statement that "Your actions as described herein were careless so as to endanger the life or property of another" must be redacted.  *See* ECF No. 165, Ex. F ¶ 18.  Further, any mention of Russell's certificate suspensions as a result of the accident also must be redacted.  *See id.* at 1 (redacting from "The Federal Aviation Administration (FAA) notified you . . ." to "After considering all the evidence in this matter . . .") and at 3–5 (redacting from "As a result, you violated the following. . ." to "Please direct all communications to . . .").  The rest of Exhibit 8 is admissible.

**VIII.  Motion *in Limine* No. 8 (Exclude the Aircraft Operational Control Agreement Between Defendants and Reference to "Competency" of Kitchens and Russell)**

In their eighth Motion, Defendants seek to preclude any mention, evidence, fact, or contention regarding the Aircraft Operational Control Agreement between Defendants Aerospike and Brandes (Plaintiffs' Exhibit 107).  ECF No. 165 at 19, Ex. G.  Defendants also seek to preclude any reference or argument concerning the "competency" of Kitchens and Russell in piloting the Aircraft on the date of the accident.  *Id.* at 20.  The Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

The Court **GRANTS** the Motion insofar as the evidence is introduced in the legal and bad faith phases of trial.  The discussion of Kitchens' and Russell's "competency" as pilots—beyond the fact that they did not hold valid certificates on the day of the accident— is irrelevant to any of the issues to be tried and has the potential of confusing the jury that their competence is a prerequisite for coverage.  Further, the Operating Agreement is irrelevant to the meaning of "pilot" and the bad faith claim.  The risk of jury confusion is extremely high, as the jury may confuse the terms of the Operating Agreement with those in the Policy.  At the Motion *in Limine* hearing, Plaintiffs' Counsel attempted to argue that because Aerospike and Brandes are "consumers" of aviation insurance, their understanding of the term "pilot" is probative of the meaning of the term in the industry.  The Court is unpersuaded by this argument and finds that any probative value is substantially outweighed by the risk of misleading the jury and unfair prejudice.  *See* Fed. R. Evid. 403.

21-CV-758 JLS (BLM)

The Court **DENIES** the Motion insofar as the evidence is tried to the bench, as it is relevant to materiality.

**IX.    Motion *in Limine* No. 9 (Exclude Evidence of the Cause of the Accident)**

In their ninth Motion, Defendants seek to preclude any mention, evidence, fact, or contention regarding the cause of the accident.  ECF No. 165 at 21.  The Court **GRANTS IN PART** and **RESERVES IN PART**.

The Court **GRANTS** the Motion insofar as the evidence is presented to the jury in the legal phase of trial because evidence relating to the cause of the accident is irrelevant and has a high likelihood of confusing the jury.  The fact that Kitchens and Russell contributed to the crash does not demonstrate whether Kitchens and Russell were "pilots" within the customary usage of that term in the aviation insurance industry nor does it assist the jury in defining "pilot."

The Court also **GRANTS** the Motion insofar as the evidence is presented to the bench because the Parties agreed at the Motion *in Limine* hearing that the cause of the accident is irrelevant to materiality, as the accident occurred after the date of Policy formation.

The Court **RESERVES RULING** on the Motion in so far as the evidence is presented during the bad faith phase of trial.

**X.    Motion *in Limine* No. 10 (Exclude SOAR Reports and Any Associated Testimony Concerning the Repairability of the Aircraft)**

In their tenth Motion, Defendants seek to exclude the SOAR Reports and preclude any associated testimony or argument concerning the repairability of the Aircraft and related costs.  ECF No. 165 at 22–23.  Specifically, the itemization of damage and repair estimate (Plaintiffs' Exhibit 58) and the damage survey report (Plaintiffs' Exhibit 59).  ECF No. 167 at 21.  The Court **RESERVES RULING** on the Motion.

The Court will allow Plaintiffs an opportunity to present a witness with personal knowledge.  However, the Court notes that it may find that this evidence is properly the subject of expert testimony.  As Defendants point out, Plaintiffs have not designated an

expert to discuss the SOAR reports, ECF No. 165 at 23, and Smith has been precluded from providing opinion on the repairability of the aircraft, *U.S. Aviation Underwriters Inc.*, 2024 WL 2948626, at *25. *See* Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to [the requirements of Rule 26(a)(2)(C)] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.").

**XI.    Motion *in Limine* No. 11 (Exclude Evidence of Russell's Failed Attempt to Obtain His DA-EASy Type Rating and/or That He Crashed the Simulator)**

In their eleventh Motion, Defendants seek to preclude any testimony or evidence that Russell failed his initial attempt to obtain his DA-EASy type rating and that he crashed the simulator during his Pilot Initial Training Course for the Subject Aircraft. ECF No. 165 at 23. Defendants also seek to exclude the email regarding the Training Center Evaluator waiver request and retest of Russell (Plaintiffs' Exhibit 5). *Id.*, Ex. K. The Court **GRANTS** the Motion.

This evidence is not relevant to any issue left to be decided and has the potential to confuse the issues and jury. First, the reasons *why* Russell had limitations on his type rating are irrelevant to whether he qualifies as a "pilot." Second, the evidence is irrelevant to materiality because at the time of Policy formation—the relevant time-period—the simulator crash and failed attempt had not occurred. *See* ECF No. 165, Ex. K (showing email date of September 27, 2020); *see also U.S. Aviation Underwriters Inc.*, 2024 WL 2948626, at *9 (showing the relevant date for materiality statements/omissions as September 11, 2020). Further, the Parties agreed at the Motion *in Limine* hearing that this evidence is not relevant to materiality.

/ / /

/ / /

/ / /

/ / /

/ / /

18

21-CV-758 JLS (BLM)

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART**, **DENIES IN PART**, and **RESERVES RULING IN PART** the Parties' Motions *in Limine* (ECF Nos. 164, 165). The Court further **SETS** a telephonic status conference for <u>Thursday, February 12, 2026, at 10:00 a.m.</u>, to discuss setting a trial date in this matter.

**IT IS SO ORDERED.**

Dated:  February 3, 2026

Hon. Janis L. Sammartino
United States District Judge

21-CV-758 JLS (BLM)